UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DEONTAYE TERRELL LUSK,**
      Petitioner,

v.                                     Case No. 20-C-0463

**WARDEN DYLAN RADTKE,**
      Respondent.

---

## **DECISION AND ORDER**

Deontaye Lusk filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Before me now is the respondent's motion to dismiss the petition.

### **I. BACKGROUND**

Lusk was convicted of thirteen crimes, including two counts of first-degree intentional homicide, stemming from a series of armed robberies that occurred between April 9, 2009 and July 12, 2009 in the City of Milwaukee.

On April 9, 2009, four people, including Deondre Gilbert, were inside a parked car when they were approached by three men. One of the men—alleged to be Lusk—approached the passenger-side window, spoke to the passengers, and then pointed a handgun into the car and asked, "What you all got?" Lusk then struck the front passenger with a gun and took her purse. When Gilbert said something, Lusk reached into the car and shot him in the right hip. Gilbert fled from the car, ran until he fell, and was transported to a hospital. As a result of these events, Lusk was charged with armed robbery with threat of force, recklessly endangering safety by use of a dangerous weapon, physical abuse of a child (one of the car's passengers was a minor), and possession of a firearm by a felon.

On May 9, 2009, Lusk and an accomplice used a handgun to rob two men and steal their truck. Lusk was charged with armed robbery by use of force.

At about 2:00 a.m. on June 21, 2009, several people were socializing outside when two men approached. One of them, whom witnesses later identified as Lusk, approached Eric Garrett and asked him what he had in his pocket. When Garrett said "nothing," Lusk shot him in the chest. Garrett died of the gunshot wound. As a result of these events, Lusk was charged with first-degree intentional homicide by use of a dangerous weapon, attempted armed robbery by use of force, and being a felon in possession of a firearm.

On the night of July 11, 2009, three men, including Lusk, approached Dwaun Bailey on the street. Lusk pointed a silver revolver at Bailey and demanded money. When Bailey said he didn't have any money, Lusk searched Bailey's pockets, took Bailey's iPod, and fled the scene. As a result of these events, Lusk was charged with armed robbery with the threat of force.

During the early morning of July 12, 2009, when bars were closing, a person named Katie Dean exited the Plan B Tavern with her nephew, Jugady Banks. As Dean and Banks approached their car, three men confronted Banks and began robbing him. Dean testified that one of the men, whom she later identified as Lusk, went through Banks's pockets while a second man held a gun and a third man acted as a lookout. Lusk took a pack of cigarettes that he found in Banks's pockets. The men then advised Banks and Dean to drive away before they started shooting.

Shortly after Lusk and his accomplices robbed Banks, Anthony Heard and John Brown approached the parking lot near the Plan B tavern in Heard's vehicle. Heard was driving Brown to the parking lot so that Brown could get his car from the lot. As they

approached the lot, Heard saw a group of men in the lot who appeared to be beating another individual. Brown got out of Heard's vehicle and began walking towards his car. The group of men surrounded Brown, and then one of them shot Brown to death. A man named Dennis Avant claimed to have witnessed the shooting and said he recognized the shooter as Lusk.

As a result of the events that occurred during the early morning of July 21, 2009, Lusk was charged with robbery with threat of force (for the robbery of Banks), first-degree intentional homicide by use of a dangerous weapon (for the murder of Brown), and being a felon in possession of a firearm.

Over Lusk's objection, the charges arising out of all the above incidents were tried together. The jury found him guilty on all counts. He was sentenced to two life sentences plus 26 years' imprisonment.

On direct review in state court, Lusk was represented by Attorney Matthew Pinix. In Wisconsin, direct review often begins with the filing of a postconviction motion in the trial court. Once the postconviction motion is resolved, the defendant may appeal to the Wisconsin Court of Appeals. However, if the defendant does not intend to raise issues on appeal that might require an evidentiary hearing, such as claims of ineffective assistance of trial counsel, then a postconviction motion is unnecessary and the defendant may proceed with an appeal.

While Lusk was represented by Pinix, new information about Lusk's case came to light. First, one of the witnesses who testified against Lusk, Antwone Greene, claimed that he was pressured to falsely testify that Lusk was the man who shot John Brown. That Greene in fact lied about witnessing Brown's murder was revealed during the trial itself.

3

After Greene testified and identified Lusk as the shooter, defense counsel's investigator learned that Greene was in juvenile custody on the night of the murder and therefore could not have witnessed it. Once this information was learned, the prosecutor conceded that Greene must have lied. The court addressed this issue during the trial, but the federal record does not reveal exactly what the court did. In any event, after Lusk was convicted, Greene apparently told Lusk or his attorney that he was pressured to falsely implicate Lusk in Brown's murder. The federal record does not identify who Greene claimed to have been pressured by, but Lusk seems to think that Greene claimed to have been pressured by former Milwaukee police officer Michael Vagnini. Vagnini was in the news frequently in 2012 because it was then revealed that he had been conducting illegal strip searches on suspects. Vagnini was fired and eventually convicted of criminal charges.

Second, while Lusk was represented by Pinix, Dennis Avant claimed that Vagnini had pressured him to testify that Lusk shot John Brown. In November 2012, Avant called Pinix and told him that he had "information he wanted to share about pressures put on him to testify in [Lusk's] case." ECF No. 12-1 at 2 of 82. According to Pinix, Avant told him that "Officer Vagnini had somehow influenced his testimony." *Id.* Pinix then scheduled a meeting with Avant at his office, which Avant attended. However, Avant immediately changed his mind about recanting his trial testimony and indicated he wanted to speak to a lawyer. In a letter to Lusk, Pinix said he believed that a lawyer would advise Avant not to recant because, if he did, he risked perjury charges as well as an upward modification of his own sentence, which had been lowered for his cooperation in the John Brown case.

Based on Pinix's letters to Lusk, it appears that Pinix learned about Greene's claim about being pressured by Vagnini before he decided whether to file a postconviction

4

motion or to proceed with an appeal. However, Avant did not come forward until after Pinix had filed his brief with the Wisconsin Court of Appeals. In any event, Pinix did not file a postconviction motion relating to either Greene, Avant, or Vagnini. Instead, he filed a notice of appeal and then raised two issues in his brief: (1) that the trial court's joinder of all charges in a single trial was improper, and (2) that a photo lineup in which Katie Dean identified Lusk as the person who robbed her nephew was suggestive.

While the case was under advisement in the court of appeals, Pinix wrote Lusk a letter in which he responded to Lusk's concerns about "an issue regarding Officer Vagnini." ECF No. 12-1 at 1 of 82. Pinix said that Lusk's appeal was "open" before the court of appeals and that he did not see any reason to voluntarily dismiss the appeal. Pinix advised Lusk that if the appeal was unsuccessful, "the Vagnini issue might be a viable claim for you to assert through a collateral attack." *Id.*

In a decision dated April 16, 2013, the court of appeals rejected the two issues Pinix had raised and affirmed Lusk's conviction. The Wisconsin Supreme Court denied further review.

Now proceeding pro se, Lusk sought collateral relief by filing a postconviction motion in the state trial court under Wis. Stat. § 974.06. Although the motion is not in the record, it appears that his primary claim was that he was entitled to a new trial based on Dennis Avant's recantation as well as other evidence that had come to light suggesting he was not the person who committed some of the crimes of which he was convicted. Besides Avant's recantation, Lusk pointed to an affidavit of Timothy Carter—Lusk's alleged accomplice in Brown's murder—in which Carter claimed he was the person who

5

shot John Brown and that Lusk had nothing to do with the homicide.[1] Lusk may have also pointed to affidavits of others who claimed to have been pressured by Vagnini and/or to have spoken to Vagnini in prison and heard him admit that he framed Lusk. *See* ECF No. 12-1 at 57–59.

In the postconviction motion, Lusk also alleged that his trial counsel was ineffective in failing to call some of his family members as alibi witnesses. The family members would have testified that, on the night of July 11, 2009 and the morning of July 12, 2009 (when the robberies of Bailey and Banks and the murder of Brown occurred), Lusk was with them playing cards, drinking alcohol, and sleeping. According to Lusk, his trial counsel decided not to call these witnesses because she believed that the jury would not believe family members.

In his postconviction motion, Lusk also alleged that Pinix had rendered ineffective assistance on direct review in several respects.[2] First, he alleged that Pinix was ineffective in failing to seek a new trial based on Avant's recantation, the Vagnini issue, and the other evidence that had come to light since he was convicted. Second, he alleged that Pinix was ineffective in failing to raise claims based on two out-of-court identifications that Lusk felt were suggestive. Both identifications concerned the murder of Eric Garrett. The witnesses were Kimberly Neal and Jessica Garrett. Third, Lusk alleged that Pinix

---

[1] The federal record contains an undated affidavit from Timothy Carter in which he admits to shooting Brown and states Lusk had nothing to do with the crime. *See* ECF No. 12-1 at 56 of 82. It is not clear if this affidavit was filed with the postconviction motion.

[2] Again, because the postconviction motion is not in the record, I cannot be certain that Lusk raised the exact claims that I describe in this paragraph or that he did not also raise other claims that I have not described. However, it is clear that he alleged that Pinix was ineffective in one or more respects.

was ineffective in failing to raise claims of ineffective assistance of trial counsel. Lusk alleged that Pinix should have raised trial counsel's ineffectiveness in not presenting the alibi witnesses and in not moving for a mistrial after it was discovered that Greene had perjured himself.

The trial court issued a written decision on the motion, which is not in the federal record. The trial court rejected most of Lusk's claims without holding an evidentiary hearing. However, the court determined that the evidence concerning Avant's recantation warranted an evidentiary hearing. It appointed counsel to represent Lusk at the hearing. The hearing occurred, and after the hearing the trial court issued an oral ruling denying Lusk's claim. The oral ruling is not in the record, and neither Lusk nor the respondent describes what occurred at the hearing or identifies the trial court's reasons for denying relief.

Lusk appealed the denial of his postconviction motion to the Wisconsin Court of Appeals. Lusk's appeal briefs are not in the record, but it appears that he raised the same claims on appeal as he did in the trial court. The Wisconsin Court of Appeals rejected all claims and affirmed the denial of the postconviction motion. The court first determined that Lusk's claim that his trial counsel was ineffective was procedurally barred because he had failed to raise it on direct review. Next, the court determined that Lusk's claim that his postconviction/appellate counsel was ineffective failed because his postconviction motion did not allege facts that, if true, would entitle him to relief on the claim. Finally, the court determined that the trial court had not erred in failing to grant Lusk a new trial based on the newly discovered evidence.

7

Lusk sought further review in the Wisconsin Supreme Court, but that court declined to accept the case.

Having exhausted his state-court remedies, Lusk filed a federal habeas petition under 28 U.S.C. § 2254. Lusk alleges four grounds for relief, which he labels as follows: (1) newly discovered evidence; (2) ineffective assistance of trial counsel for failure to call alibi witnesses; (3) ineffective assistance of appeal counsel; (4) actual innocence. Within these grounds, Lusk appears to be asserting the same claims that he raised on collateral review in state court. Lusk does not pursue the issues that Pinix had raised on direct review, i.e., improper joinder and Katie Davis's suggestive identification.

The respondent now moves to dismiss the petition. He contends that grounds one and four are not grounds on which the court may grant habeas relief. The respondent further contends that Lusk procedurally defaulted his ineffective-assistance claims.

## II. DISCUSSION

To obtain a writ of habeas corpus, a person in state custody must show that he is in custody in violation of the Constitution or laws or treaties of the United States. *See* 28 U.S.C. § 2254(a). However, a petitioner may procedurally default an otherwise cognizable federal claim. Procedural default is an aspect of the independent-and-adequate-state-ground doctrine, which governs the Supreme Court's jurisdiction to directly review decisions by state courts. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Under that doctrine, the Supreme Court will not review a question of federal law decided by a state court if that court's decision rests on a state-law ground that is independent of the federal question and adequate to support the judgment. *Id.* The Supreme Court has expanded the doctrine to apply not only to its own review of state-court decisions, but

also to any federal court's review of the legality of a person's custody under a state judgment. *Id.* at 729–30. The habeas version of the doctrine (the procedural-default doctrine) generally bars federal review when a state court declines to address the merits of a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. *Id.* However, there are two exceptions to the procedural-default doctrine. *See, e.g., Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015). The first applies when the petitioner can establish cause for his default and show that he would suffer prejudice if the federal court refused to consider the merits of his claims. *Id.* The second applies when the petitioner shows that a failure to consider the federal claims will result in a fundamental miscarriage of justice. *Id.* This second exception applies only when the claimed constitutional violation probably caused the conviction of an innocent person. *Id.*

As noted, Lusk alleges four grounds for habeas relief in his petition. However, two of those grounds—newly discovered evidence and actual innocence—are not traditionally presented as stand-alone claims for habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (refusing to recognize a stand-alone claim for habeas relief based on actual innocence and newly discovered evidence). And here, Lusk concedes that he cannot obtain relief on his claims of actual innocence unless he also shows that a federal constitutional violation resulted in his conviction. *See* Br. in Opp. to Mot. to Dismiss at 2, ECF No. 12. Lusk then explains that he alleges his claims of newly discovered evidence and actual innocence for two reasons. *See id.* at 3. First, he says that he intends to pursue a claim that his appellate counsel was ineffective in failing to use the newly discovered evidence on direct review. Second, he says that his claims of newly discovered evidence and actual innocence will be relevant if the court determines that he procedurally

9

defaulted any of his ineffective-assistance claims. If a claim is defaulted, he intends to use the new evidence to show that he qualifies for the fundamental-miscarriage-of-justice exception.

I thus turn to the question of whether Lusk's ineffective-assistance claims are defaulted. I start with his claims involving trial counsel. The Wisconsin Court of Appeals deemed such claims procedurally barred because Lusk could have, but did not, raise them on direct review. This was a straightforward application of *State v. Escalona-Naranjo*, which holds that, absent a "sufficient reason," a person convicted of a crime may not raise a claim on collateral review that could have been raised in a prior postconviction motion or during direct review. 185 Wis. 2d 168, 185 (1994). The *Escalona-Naranjo* rule qualifies as an independent and adequate state-law ground. *See Perry v. McCaughtry*, 308 F.3d 682, 692 (7th Cir. 2002). Thus, Lusk has procedurally defaulted his claim of ineffective assistance of trial counsel, and I may not grant relief on that claim unless he shows cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice.

Turning to Lusk's claims involving his postconviction/appellate counsel, I conclude that the Wisconsin Court of Appeals did not reject the claims based on a procedural rule that was "independent" of federal law. A procedural ruling is not independent of federal law "when resolution of the state procedural law question depends on a federal constitutional ruling." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985); *see also Stewart v. Smith*, 536 U.S. 856 (2002). And here, the Wisconsin Court of Appeals made federal constitutional rulings in the course of determining that Lusk had failed to plead an ineffective-assistance claim that warranted a hearing. The court noted that, under

10

*Strickland v. Washington*, 466 U.S. 668 (1984), Lusk was required to prove that his counsel's performance "was both deficient and prejudicial." ECF No. 10-2 at 5. The court then determined that the facts alleged in the motion did not "make the case" that his counsel's performance satisfied the *Strickland* standard. *Id.* The court also noted that, to prevail on a claim of ineffective assistance of appellate counsel, Lusk was required to show that the issues counsel failed to raise were "clearly stronger" than the issues he did raise. *Id.* at 6. This "clearly stronger" test is itself based on federal law. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000). The court found that Lusk had not demonstrated that the issues his postconviction counsel failed to raise were clearly stronger than the issues he did raise. *See* ECF No. 10-2 at 6. In short, the Wisconsin Court of Appeals applied federal standards governing ineffective-assistance claims to the facts alleged in Lusk's postconviction motion and determined that the facts alleged did not give rise to a viable federal claim warranting an evidentiary hearing. This was a ruling on the merits of the federal claim, not a refusal to consider the merits of the federal claim based on a state procedural rule. Thus, Lusk did not procedurally default his claims of ineffective assistance of appellate counsel that he raised in his state postconviction motion.

The remaining issue is whether Lusk's default of his claim of ineffective assistance of trial counsel should be set aside based on either the cause-and-prejudice exception or the fundamental-miscarriage-of-justice exception. Ineffective assistance of appellate counsel can serve as cause to set aside a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Moreover, Lusk's claim of actual innocence might bring him within the fundamental-miscarriage-of-justice exception. However, neither of these issues are ripe for a judicial decision. The parties have not briefed the merits of the ineffective-

11

assistance claims involving appellate counsel or addressed whether Lusk's newly discovered evidence brings him within the fundamental-miscarriage-of-justice exception. For this reason, I will leave these issues open until after the parties file their briefs on the merits of the petition. The parties' briefs should address (1) the merits of the ineffective-assistance claims involving postconviction/appellate counsel, (2) whether Lusk qualifies for the fundamental-miscarriage-of-justice exception, and (3) the merits of the ineffective-assistance claims involving trial counsel. I include the trial-counsel claims in this list because it is often easier to reject a defaulted claim on the merits than to determine whether the petitioner's default should be set aside, *see Carrion v. Butler*, 835 F.3d 764, 772 & n.26 (7th Cir. 2016), and because, if the default is set aside, I intend to address the merits of the claim in the same opinion.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the respondent's motion to dismiss the petition is **DENIED**.

**IT IS FURTHER ORDERED** that that, within 60 days of the date of this order, the respondent shall answer the petition, complying with Rule 5 of the Rules Governing § 2254 Cases.

**IT IS FURTHER ORDERED** that the parties shall abide by the following schedule regarding the filing of briefs on the merits of petitioner's claims: (1) petitioner shall have 45 days following the filing of respondent's answer within which to file his brief in support of his petition; (2) respondent shall have 45 days following the filing of petitioner's initial brief within which to file a brief in opposition; and (3) petitioner shall have 30 days following the filing of respondent's opposition brief within which to file a reply brief, if any.

12

Pursuant to Civil L.R. 7(f), the following page limitations apply: briefs in support of or in opposition to the habeas petition must not exceed 30 pages and reply briefs must not exceed 15 pages, not counting any statements of facts, exhibits, and affidavits.

Dated at Milwaukee, Wisconsin, this 29th day of October, 2020.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge
